IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TBI DIAGNOSTIC CENTERS OF GEORGIA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:23-CV-3935-TWT |

### OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ("State Farm")'s Motion to Dismiss [Doc. 5] and the Plaintiff TBI Diagnostic Centers of Georgia, LLC ("TBI")'s Motion to Remand [Doc. 8]. For the reasons stated below, State Farm's Motion to Dismiss [Doc. 5] is DENIED as moot and TBI's Motion to Remand [Doc. 8] is GRANTED.

### I. Background

This case involves an alleged scheme in which State Farm uses the threat of lawsuits to compel medical providers and testing facilities into accepting lower payment amounts than they are owed. TBI is an independent facility located in Decatur, Georgia that provides diagnostic testing for concussion and traumatic brain injury. (Compl. ¶¶ 1, 11). Both State Farm

Defendants are insurance companies that are incorporated in Illinois and have their principal place of business there. (Notice of Removal ¶ 14).

Georgia law requires all Georgia automobile insurance policies to include liability coverage, but Medical Payments Coverage Benefits ("MPC Benefits") are optional. (Compl. ¶ 13). Virtually none of the individuals seen at TBI's facility have MPC Benefits. (*Id.* ¶ 14). When one of TBI's individual test patients is represented by counsel and obtains recovery from a responsible third party, the patient's counsel pays TBI out of the patient's recovery. (*Id.*). In such circumstances, TBI sends its records and a statement of costs to the attorney representing the patient. (*Id.* ¶ 15). When TBI forwards its records, it does not have any interaction with the third-party insurer and does not have knowledge or input into what the patient's counsel actually submits or how counsel characterizes those records. (*Id.* ¶¶ 16-17).

Despite that, State Farm sues testing facilities for fraud claiming that the facilities know that the tests are unreasonable and unnecessary. (*Id.* ¶¶ 51-53). In these suits, State Farm allegedly contends that the testing facilities engage in such testing to manufacture the appearance of more serious injuries and thereby generate more referrals from personal injury attorneys. (*Id.* ¶ 52). TBI asserts that State Farm then uses the threat of federal lawsuits to coerce providers into pre-litigation "settlements." (*Id.* ¶ 61). Facing the prospect of reputational damage and the cost of defending a lawsuit against

2

such a large corporation, most medical providers give in to State Farm's demands before they even get the chance to challenge State Farm's claims. (*Id.* ¶¶ 75-77). TBI alleges that State Farm's fraud claims are false both because (1) testing facilities do not have an independent duty to assess the reasonableness and/or necessity of a prescription and (2) given how settlement negotiations work, State Farm does not make payments with reliance on the testing facilities records. (*Id.* ¶¶ 54, 90).

TBI asserts that it is now being targeted by this scheme. (*Id.* ¶¶ 63-66). On or about June 23, 2023, State Farm's counsel sent a letter to TBI which sought a meeting to discuss questions regarding treatment and billing for services rendered to patients whose claims are covered by a State Farm policy. (*Id.* ¶¶ 62, 64). In the letter, State Farm's counsel demanded that TBI execute a "Confidentiality, Tolling and Moratorium Agreement" ("CTM Agreement") prior to hearing what those questions were. (*Id.* ¶ 66). The CTM Agreement required TBI to agree that (1) the statute of limitations would be tolled during the "settlement discussions," (2) TBI could not file any lawsuit against State Farm during the "moratorium" period, (3) the tolling period would be considered to start "from the beginning of the world" and extend through the expiration of the CTM agreement, (4) any information disclosed during the discussion could not be used in future lawsuits, and (5) TBI would waive the first-to-file rule. (*Id.* ¶ 68). Out of fear of being sued for fraud if it did not comply

3

with State Farm's demand, TBI signed the CTM Agreement on July 7, 2023. (*Id.* ¶ 69). State Farm then signed the same Agreement on July 10, 2023. (*Id.*). After a meeting was not scheduled within fourteen business days of July 10th as required by the CTM Agreement, TBI sent State Farm's counsel a recission notice on July 31, 2023. (*Id.* ¶¶ 71-73).

TBI also filed a Complaint with the Superior Court of DeKalb County on July 31, 2023. As stated in the Complaint, TBI seeks an order confirming the recission of the signed CTM Agreement and a declaration that:

> (a) Plaintiff, as an independent diagnostic testing facility, does not represent that a diagnostic test it performs upon the referral of a treating doctor is medically necessary;
> (b) State Farm has not and is not presently relying on the truth or accuracy of any representation made by Plaintiff in determining the settlement amount of any third-party injury claim made by a test subject who received testing at Plaintiff's facility;
> (c) No portion of any settlement paid by State Farm in any third-party claim in which Plaintiff provided diagnostic testing upon the referral of a treating physician was proximately caused to be paid by any representation by Plaintiff;
> (d) Any payment made by State Farm in settlement of a third-party claim which State Farm apportions to Plaintiff was voluntary.

(*Id.* ¶ 100, 103). State Farm removed the case to this Court on September 1, 2023, and subsequently moved to dismiss the case.

## II.   Legal Standard

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and the Congress of the United States have authorized them to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Where no federal question exists, diversity jurisdiction can be invoked where there is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332(a).

### III.   Discussion

State Farm removed this case to federal court based on diversity jurisdiction. TBI does not dispute that there is complete diversity but moves to remand the case because TBI claims the amount-in-controversy requirement has not been satisfied. The Court agrees and remands the case.

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citations omitted). For declaratory or injunctive relief, the amount in controversy is "the monetary value of the object of the litigation that would flow to the plaintiffs if the

injunction were granted." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) (citation omitted). Generally, there must be "a legal certainty that the claim is really for less than the jurisdictional amount" before finding the amount-in-controversy requirement has not been met. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (footnote omitted). However, "this liberal standard for jurisdictional pleading is not a license for conjecture." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). The Court must therefore find a lack of jurisdiction if the value of the equitable relief is "so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000." *Id.* at 1268-69.

State Farm argues that it has met the amount-in-controversy requirement for several reasons. First:

> To the extent State Farm has questions concerning Plaintiff's billings for treatment services rendered on behalf of State Farm insureds, the billings involved include: (a) over $25,000 in billings since 2020 by Plaintiff for services allegedly provided to State Farm insureds on first-party claims; and (b) over $1,000,000 in billings since 2020 by Plaintiff for services allegedly provided to other individuals under State Farm insureds' bodily injury liability, uninsured and underinsured motorist coverages (collectively categorized by Plaintiff as third-party claims), of which State Farm considered over $400,000 in determining the settlement amounts of third-party claims, Compl. ¶ 103, easily satisfying the $75,000 amount-in-controversy requirement.

(Notice of Removal ¶ 17). Furthermore, State Farm asserts that a declaration stating that settlements of TBI's billings on any third-party claims must be

6

voluntary exceeds the jurisdictional requirement. (*Id.* ¶ 18). State Farm proffers that, on average, TBI has had over $130,000 worth of bills for treatment of individuals on third-party claims by State Farm each year since 2020, so even one year's bills satisfies the amount-in-controversy requirement. (*Id.*). Lastly, State Farm claims that the declaratory judgment has value in that it would avoid the burden of defending a lawsuit by State Farm in the future. (*Id.* ¶ 19).

The Plaintiff seeks no damages in this action. The monetary value of any declaratory relief that might be granted in the unlikely event that the Plaintiff prevails in this case is entirely speculative and conjectural. Two recent opinions in similar cases demonstrate why these calculations are too conjectural to satisfy the jurisdictional threshold. In *Wellness Around the World Chiropractic, LLC v. State Farm*, 1:23-CV-997-MHC, ECF 17, slip op. at 10 (N.D. Ga. Oct. 3, 2023), State Farm's position was that "the Court should consider the costs Wellness would incur if State Farm were to file a lawsuit, deny all future claims, or demand the return of all past claim payments in the amount-in-controversy calculation for the instant action." There, the court found that State Farm misconstrued the relief being sought and that a ruling granting declaratory judgment would not preclude State Farm from filing a lawsuit, denying futural claims, or clawing back funds already paid. *Id.*, slip op. at 11. Instead, State Farm would just be required to meet a higher pleading

7

standard by pointing to evidence of fraud other than alleged patterns in the plaintiff's past records. *Id.* The court held that a heightened pleading requirement in the future did not impact the amount in controversy in the present case. *Id.*

While the heightened pleading would affect the likelihood that State Farm would recover in a future suit, "[c]alculating such likelihood, the difference in the costs of litigation, or the amount of money not paid or recovered by State Farm would be an attempt to quantify the value of the right that would require the sort of guesswork that the Eleventh Circuit forbid in Leonard." *Id.* (quotation marks and citation omitted). The court also rejected State Farm's argument that future legal fees satisfied the amount-in-controversy requirement because State Farm failed to provide any basis for concluding that the plaintiff would save money in attorney's fees by defending a lawsuit conforming to the declaratory judgment. *Id.*, slip op. at 12 n. 3. Ultimately, the court remanded the case for failure to meet the jurisdictional threshold because "the jurisdictional analysis here turn[ed] on the value Wellness w[ould] receive if a declaratory judgment [were] granted, not on the value Wellness w[ould] receive if State Farm los[t] its hypothetical future lawsuit." *Id.*, slip op. at 14-15 (quotation marks omitted).

State Farm tries to distinguish the present case from *Wellness Around the World* on two bases: (1) the present lawsuit addresses the validity of three

defenses rather than pleading standards for a fraud lawsuit, and (2) the present lawsuit seeks a declaration that would negate State Farm's ability to prove fraud with respect to any representation made by TBI in any third-party bills and would apply the voluntary payment doctrine to payments made to TBI after settlements of third-party claims. (Defs.' Notice of Supp. Authority, at 2-3). State Farm has already tried to make these same arguments in another case. Defendants' Notice of Supp. Authority at 2-3, *Peachtree Ctr. Rehab, LLC v. State Farm*, 1:23-cv-03931-VMC, ECF 13 (N.D. Ga. Oct. 23, 2023). There, the court rejected State Farm's arguments and remanded the case. *Peachtree Ctr. Rehab, LLC v. State Farm*, 1:23-cv-03931-VMC, ECF 18, slip op. at 8 (N.D. Ga. Oct. 23, 2023). The court held that it "still cannot judge the value of a threatened claim solely by the nature of potential affirmative defenses. State Farm has chosen, for whatever reason, to be cagey about its potential claims against Plaintiff, and this indefiniteness precludes this Court from exercising jurisdiction over this dispute." *Id.*

State Farm has been similarly cagey here. State Farm appears to be the only party with the information necessary to say how much is at issue in the present action. Yet, instead of stating what questions it has for TBI or what potential claims (if any) it plans to bring against TBI, State Farm has pointed generally to past billing as sufficient evidence that the jurisdictional threshold is met. (Notice of Removal ¶¶ 17-18). In doing so, State Farm invites the Court

9

to simply speculate that because TBI has billed enough services to individuals insured by State Farm generally, the limited declaratory relief requested here must have enough value to meet the amount-in-controversy requirement. The Court declines that invitation. *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (rejecting plaintiff's argument because "[i]t requires indulging the kind of 'conjecture, speculation, or star gazing' that we have found inappropriate in analyzing the amount in controversy." (citation omitted)). Finally, with respect to the future litigation burden, "the hypothetical costs of State Farm's threatened suit do not constitute the value of the object of *this* litigation, particularly based on the foregoing absence of evidence produced by State Farm regarding the nature of its potential dispute with Plaintiff." *Peachtree Ctr. Rehab*, 1:23-cv-03931-VMC, slip op. at 8.

In short, the Court finds the reasoning in *Wellness Around the World* and *Peachtree Center Rehab* to be persuasive and applicable to this case. The Court will therefore follow them and remand this case. Consequently, the Court lacks jurisdiction to rule on State Farm's Motion to Dismiss [Doc. 5], which is denied without prejudice as moot.

### IV.   Conclusion

For the foregoing reasons, TBI's Motion to Remand [Doc. 8] is GRANTED. Accordingly, State Farm's Motion to Dismiss [Doc. 5] is DENIED without prejudice as moot. The Clerk is DIRECTED to remand this matter to

the Superior Court of Dekalb County.

    SO ORDERED, this   11th   day of December, 2023.

                                              THOMAS W. THRASH, JR.
                                              United States District Judge